FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION 28  P  2: 45

DISTRICT OF UTAH

BY:
DEPUTY CLERK

| | |
|---|---|
| CLAUDIA SANBORN,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN LENDING NETWORK et al.,<br><br>Defendants. | **OPINION & ORDER**<br><br>Case No.  2:03 CV 610<br><br>Judge Dee Benson |

## I. INTRODUCTION

Plaintiff Claudia Sanborn brought this suit on July 9, 2003 under the Real Estate
Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, the Truth In Lending Act
("TILA"), 15 U.S.C. §§ 1601-1641, and the Fair Debt Collection Practices Act ("FDCPA"), 15
U.S.C. § 1692, against Defendants American Lending Network ("American Lending"),
Stephanie Bevard, and D Land Title. Plaintiff also asserted state law claims for fraud, theft and
conversion, intentional and negligent infliction of emotional distress, and common law
conspiracy. American Lending counterclaimed against Ms. Sanborn for breach of contract.

D Land Title subsequently moved for summary judgment (Docket #36) which
precipitated the dismissal of D Land Title from the case by stipulation in December 2005. The
litigation continued with Plaintiff's claims against the two remaining Defendants and American
Lending's counterclaim. The Court eventually set the matter for trial on October 10, 2006. Just
over a month before trial, Plaintiff moved for partial summary judgment, addressing only some
of her claims against Defendants, as well as for sanctions against Defendants' attorneys.
Defendants responded with motions for summary judgment of their own.

Before the Court are Plaintiff's Motion for Partial Summary Judgment (Docket #46), American Lending's and Bevard's Cross-Motions for Summary Judgment (Docket #53 & #54), Plaintiff's combined Motions to Strike American Lending's and Bevard's Cross-Motions for Summary Judgment (Docket #58 & #60) and Plaintiff's Motions for Sanctions (Docket #63 & #65), and Plaintiff's Motion for Sanctions against Defendants' attorneys (Docket #49). The Court, having considered the parties' arguments, briefs, and the relevant law, issues the following order for the reasons set forth in the opinion below and: (1) DENIES Plaintiff's Motion for Partial Summary Judgment; (2) GRANTS Defendants' Cross-Motions for Summary Judgment as to each of Plaintiff's claims for relief; (3) declines to exercise supplemental jurisdiction over American Lending's counterclaim against Ms. Sanborn; (4) DENIES Plaintiff's combined Motions to Strike American Lending's and Bevard's Cross-Motions for Summary Judgment and Motions for Sanctions; and (5) DENIES Ms. Sanborn's Motion for Sanctions against Defendants' attorneys.

## II. BACKGROUND

American Lending is a mortgage broker and Ms. Bevard is a loan officer who works for American Lending. Plaintiff sought and obtained loans from American Lending over the course of several years on two parcels of real property that she owns in Gunnison, Utah. One of Ms. Sanborn's homes was located at 100 North 1st West, Gunnison, Utah (the "Rental Property"), which in 2001 was encumbered by a mortgage of approximately $46,000 at an interest rate of 13%. The other home was located at 12 North Center Street, Gunnison, Utah (the "Center Street Property"), which in 2001 was encumbered by two mortgages, the first mortgage in the amount of $84,000, at an interest rate of 12%, and the second mortgage, held by American Lending, in the amount of $49,500, at an interest rate of 15.625%.

2

On November 29, 2001, Ms. Sanborn participated in a loan closing at American Lending wherein she refinanced the Rental Property in the amount of $72,000 at an interest rate of 9.625%, representing approximately a 3.4 percentage point reduction from the original interest rate. Before the closing, Ms. Sanborn spent several hours examining several different loan scenarios with a representative of American Lending to help her accomplish her goal of reducing her overall payments and interest rates on her three outstanding mortgages, as well as on some of her other debts. In the end, Ms. Sanborn directed American Lending to apply $22,610 from the Rental Property refinance to pay down the second mortgage on the Center Street Property, which was held by American Lending. Ms. Sanborn also directed American Lending to use some of the money from the refinance to pay down an outstanding credit card balance.

D Land Title prepared an initial United States Department of Housing and Urban Development Settlement Statement ("HUD-1") as directed by American Lending for the closing. Ms. Sanborn signed this document, which properly reflected a $72,000 mortgage, but erroneously provided that Ms. Sanborn would receive $23,878.46 in cash at closing. Thereafter, D Land Title prepared an amended HUD-1 at the direction of American Lending which provided that $22,610 of the Rental Property refinance funds were to be used to pay down the second mortgage on the Center Street Property. In addition, the amended HUD-1 provided that $1,000 would be used to pay down a visa credit card and that $267.90 would be used to pay an outstanding hazard insurance premium.

There is no credible evidence suggesting that Ms. Sanborn ever signed the amended HUD-1. The HUD-1 bearing Ms. Sanborn's signature, which Defendants produced from their loan files and which reflects the $22,610 pay down, has a first page containing numbers which do not match the numbers on the second signature page. In fact, the signature page appears to be the

3

second page from the original HUD-1.  It appears that Ms. Sanborn signed an inaccurate version

of the HUD-1, and in an attempt to get the loan closed quickly, American Lending exchanged the

signature pages.  In fact, Defendants' counsel concurred with the Court at the hearing that such

appeared to be the case.  However, even if the signature pages were somehow interchanged by

American Lending, Ms. Sanborn has admitted that she has not been harmed in any way,

financially, emotionally, or otherwise as a result.

Ms. Sanborn also makes a claim that she and American Lending agreed that she would

receive $5,000 cash at the time of the refinance.  Despite the divergence between the versions of

the HUD-1, there is no evidence, in any version of the HUD-1, of any such agreement between

Ms. Sanborn and American Lending for a $5,000 cash payment to Ms. Sanborn from the

proceeds of the refinance.  Nevertheless, a few days after the closing, Ms. Sanborn contacted

American Lending seeking $5,000 in cash that she claimed she was entitled to from the Rental

Property refinance.  American Lending informed Ms. Sanborn that she would not be receiving

$5,000 as that was never agreed to, but that the money from the refinance had been used to pay

down other debts pursuant to her wishes.

Thereafter, Ms. Sanborn contacted her attorney, D. Bruce Oliver, regarding the Rental

Property refinance.  In early December, 2001, Mr. Oliver contacted American Lending regarding

the Rental Property refinance on behalf of Ms. Sanborn.  Apparently as a result of this contact,

Ms. Sanborn met with Ms. Bevard at American Lending on December 19, 2001, at which time

American Lending refinanced the $84,000 first mortgage on the Center Street Property at an

interest rate of 7%, a 5 percentage point reduction from Ms. Sanborn's original first mortgage.

American Lending also released its deed of trust securing the second mortgage on the Center

Street Property, which before the $22,610 pay down was approximately $46,000, and provided

4

Ms. Sanborn with a new second mortgage in the amount of $12,000, forgiving or writing off the

remainder of the second mortgage in the process. Despite American Lending's efforts to help

Ms. Sanborn restructure her debt, Ms. Sanborn filed her Complaint in this case on July 9, 2003.

### III. DISCUSSION

#### A.    CROSS-MOTIONS FOR SUMMARY JUDGMENT

Ms. Sanborn initially moved for partial summary judgment as to her RESPA and TILA

claims as well as her state law claims of theft, conversion and common law conspiracy.

American Lending and Ms. Bevard responded by moving for summary judgment as to each of

the claims alleged in Ms. Sanborn's complaint. As a result, the Court will address each of

Plaintiff's claims. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

56(c)). "In accordance with the summary judgment standard, evidence is viewed in the light

most favorable to the nonmoving party." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th

Cir. 1998). Because Ms. Sanborn has been unable to provide sufficient evidence to support each

of her claims against Defendants, Defendants are entitled to judgment as a matter of law, and

their cross motions for summary judgment are GRANTED.

#### FEDERAL CLAIMS

#### 1.    Real Estate Settlement Procedures Act

Ms. Sanborn's RESPA claim relies on multiple sections of the Act, namely 12 U.S.C. §§

2601, 2603, and 2605.

### a.      Section 2601

Ms. Sanborn alleges that Defendants violated section 2601 of RESPA by causing the incurrence of "kickbacks" or "referral fees" as a result of the pay down of the second mortgage on the Center Street Property. This claim is insufficient for the following reasons:  (1) the plain language of section 2601 does not provide for a private right of action; and (2) there are insufficient facts supporting Ms. Sanborn's argument that Defendants were improperly paid "kickbacks" or "referral fees" from the Rental Property closing. American Lending applied $22,610 from the Rental Property refinance to pay down the principal of the second mortgage on the Center Street Property, which is not a "kickback" or a "referral fee."

There is, however, a private right of action to prevent kickbacks in section 2607. Unfortunately, Ms. Sanborn failed to allege a claim arising from section 2607 in her complaint. Even if she had made such a claim, a claim for an alleged violation of section 2607 must be brought within one year of the date the violation occurred.  12 U.S.C. § 2614. Here, Ms. Sanborn's complaint was filed over 18 months after the November 29, 2001 closing, on July 9, 2003. Therefore, a section 2607 claim would be time barred and this Court would not have jurisdiction over such a claim. Moreover, there are insufficient facts to support Ms. Sanborn's contention that Defendants received any type of kickback as contemplated in section 2607 and, as a result, this claim must fail as a matter of law.

### b.      Sections 2603 & 2605

Ms. Sanborn's claim pursuant to sections 2603 and 2605 of RESPA begins with the fact that Congress has required the use of a standardized uniform settlement statement in transactions involving federally regulated mortgage loans commonly referred to as the HUD-1.  "Such form shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges

imposed upon the seller in connection with settlement." 12 U.S.C. § 2603.  Ms. Sanborn then

tries to link the fact that section 2603 provides for the use of a specific form to section 2605,

which imposes upon a creditor the duty to disclose to an applicant the possibility of an

assignment, sale, or transfer of loan servicing.  The relevant language, using the term, as Ms.

Sanborn does, loosely, of section 2605 provides that:

> Each person who makes a federally related mortgage loan shall disclose to each person
> who applies for the loan, at the time of application for the loan, whether the servicing of
> the loan may be assigned, sold, or transferred to any other person at any time while the
> loan is outstanding.

Although section 2605 provides for a private right of action, the section is limited to a

lender's obligation to notify a borrower if there is any possibility that a loan may be assigned,

sold, or transferred, and the lender's obligation to pay any taxes or insurance if funds have been

placed in escrow with the lender for that purpose.  Section 2605 does not, however, as argued by

Ms. Sanborn, "impose upon the creditor or lessor duty to disclose upon the Plaintiff the HUD

Settlement Statement."  There is no allegation by Ms. Sanborn, nor evidence to support such a

claim, that Defendants either transferred, or intended to transfer, assign, or sell Ms. Sanborn's

loan to another lender without notice in violation of section 2605.  Therefore, Defendants are

entitled to judgment as a matter of law as to Ms. Sanborn's section 2605 RESPA claim.

### 2.   <u>Truth In Lending Act</u>

In her TILA claim, Ms. Sanborn alleges that Defendants failed to make disclosures to her

in connection with the Rental Property refinance as required by 15 U.S.C. § 1631.  Specifically,

Ms. Sanborn claims that at no time did Defendants inform her that $22,610 from the Rental

Property refinance would be used to pay down her second mortgage on the Center Street

Property.  According to Ms. Sanborn, the only agreement that she reached with Defendants was

the one memorialized in the original HUD-1, which did not provide for a pay down of $22,610.

However, the undisputed evidence before the Court demonstrates that Ms. Sanborn was not only informed about the pay down of the second mortgage on the Center Street Property, but that she made the informed decision to make such a payment for the purpose of restructuring her debt. Furthermore, there is no credible evidence to the contrary. Therefore, Ms. Sanborn's TILA claim pursuant to section 1631 must fail as a matter of law.

In addition, even if Ms. Sanborn had sufficient evidence to support a TILA claim against Defendants, Ms. Sanborn filed her complaint after the one year statute of limitations had expired on her claim. Pursuant to 15 U.S.C. § 1640(e), where there is civil liability for a violation of TILA, an action must be brought "within one year from the date of the occurrence of the violation." Here, Ms. Sanborn filed her complaint over 18 months after the alleged violation of TILA occurred and the court does not have jurisdiction over such a claim.

### 3.    **Fair Debt Collections Practices Act**

Ms. Sanborn asserts a claim against Defendants under the FDCPA, 15 U.S.C. § 1692(e), because Defendants allegedly engaged in "false, deceptive, or misleading representation[s] or means in connection with the collection of [a] debt." However, there are insufficient facts to show that any of the Defendants' conduct is a violation of the FDCPA. Although the illicit conduct depicted in 15 U.S.C. § 1692(e)(1)-(16) is not meant to be exhaustive, not only has Ms. Sanborn failed to show that Defendants have engaged in any of the described conduct, but she has not demonstrated that any of Defendants' conduct has been false, deceptive, or misleading "in connection with the collection of any debt."

In addition, as with Ms. Sanborn's TILA claim, even if Ms. Sanborn had an actionable claim under the FDCPA, such claim would be barred by the applicable one year statute of limitations in 15 U.S.C. § 1692(k)(d).

## STATE LAW CLAIMS

### 4.    Fraud

Ms. Sanborn alleges that she has been the victim of a fraud perpetrated by the Defendants which resulted in the unauthorized disbursement of $22,610 from the Rental Property refinance, and deprived her of $5,000.  In support of her claim, Ms. Sanborn argues that the submission of a false HUD-1 to Matrix, the lender for the Rental Property refinance, reasonably induced Matrix to rely on the false statements by acting to pay the proceeds of the refinance according to American Lending's wishes, and against those of Ms. Sanborn.

Defendants counter that Ms. Sanborn has not plead her fraud claim with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.  The Court finds that not only has Ms. Sanborn failed to plead fraud with sufficient particularity, but that she has not provided sufficient evidence to meet all of the necessary elements to establish a claim of fraud.  What is more, the facts relied upon by Ms. Sanborn to support her theory of fraud simply do not constitute fraud.  Ms. Sanborn has provided no evidence to show that she did not receive the benefit of all the monies distributed from the Rental Property refinance.  Therefore, Defendants are entitled to judgment as a matter of law as to Ms. Sanborn's fraud claim.

### 5.    Theft & Conversion

Ms. Sanborn alleges that Defendants' actions deprived her of $5,000 that she tried to obtain from the Rental Property Refinance, and that Defendants actually converted the money for their own benefit.  The Court, after considering the briefs and the relevant law finds that Defendants are entitled to judgment as a matter of law as to this claim as the undisputed facts do not support Ms. Sanborn's claim for relief.

9

### 6.   Infliction of Emotional Distress

Ms. Sanborn alleges that Defendants, by their intentional and reckless actions, committed against her the tort of infliction of emotional distress.  In order to recover on a claim for infliction of emotional distress, Ms. Sanborn must be able to prove that: (1) Defendants engaged in conduct that was outrageous and intolerable in that it offended generally accepted standards of decency and morality; (2) that it was Defendants' intention to cause emotional distress; (3) that Ms. Sanborn indeed suffered severe emotional distress; and (4) that Ms. Sanborn's distress was actually caused by the Defendants.  *See Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 535 (Utah 2002).

In this case, Ms. Sanborn has not provided sufficient facts to support a claim for emotional injury.  In fact, Ms. Sanborn acknowledged in her filings with the court, as well as at the hearing, that she has suffered no injury as a result of Defendants' conduct, emotional or otherwise.  Furthermore, there are insufficient facts to support Ms. Sanborn's claim that Defendants intended to cause her emotional distress, or even that they acted with reckless disregard of a likelihood of causing emotional distress.  Therefore, Ms. Sanborn is unable to meet her burden to prove a claim for emotional distress as her claim has little if any factual support, and little regard for the requisite elements required to prove such a claim.  Ms. Sanborn's claim for infliction of emotional distress is accordingly denied, as Defendants are entitled to judgment as a matter of law.

### 7.   Common Law Conspiracy

Ms. Sanborn's last claim alleges that the Defendants acted together to complete the altered mortgage loan to Ms. Sanborn's detriment.  As outlined in Defendants' briefing, Ms. Sanborn has failed to establish sufficient facts supporting any one of the elements of a common

law conspiracy.  Such failure is fatal to Ms. Sanborn's claim, and the claim must therefore fail as a matter of law.

### B.  AMERICAN LENDING'S COUNTERCLAIM FOR BREACH OF CONTRACT

After dismissing each of Ms. Sanborn's claims against the Defendants in this case, the only remaining claim is Defendant American Lending's counterclaim against Ms. Sanborn.  The Court lacks diversity jurisdiction over this claim pursuant to 28 U.S.C. § 1332 as Ms. Sanborn and Defendants are all citizens of the state of Utah.  Furthermore, the breach of contract claim does not create federal-question jurisdiction pursuant to 28 U.S.C. § 1331.  Therefore, in order for American Lending to proceed with its counterclaim in this forum, the Court must exercise supplemental jurisdiction over the counterclaim.

The supplemental jurisdiction statute, 28 U.S.C. § 1367(c)(3), provides in relevant part that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (1) if- . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  As each of Ms. Sanborn's federal claims pursuant RESPA, TILA and FDCPA against American Lending have been dismissed, this Court, in its discretion, declines to exercise supplemental jurisdiction over American Lending's counterclaim for breach of contract.

### C.  PLAINTIFF'S COMBINED MOTIONS TO STRIKE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT & MOTIONS FOR SANCTIONS

Prior to responding to Defendants' cross-motions for summary judgment on the merits, Ms. Sanborn moved to strike Defendants' motions for failure to comply with DUCivR7-1(a) and DuCivR 56-1(a).  DUCivR7-1(a) generally requires that motions succinctly set forth, without argument, "the specific grounds of the relief sought."  DuCivR 56-1(a) makes the same requirement specifically applicable to motions for summary judgment.  In addition to striking Defendants' motions for failure to comply with the rules, Ms. Sanborn requests that the Court

impose further sanctions against Defendants for filing their motions.

The Court finds that Defendants' motions succinctly set forth, without argument, "the specific grounds of the relief sought." If there was ever any question that the motions did not comply with the rules, as a precautionary measure, Defendants attached amended motions for summary judgment to their oppositions to Ms. Sanborn's motions to strike and for sanctions. Therefore, Defendants' cross-motions for summary judgment comply with the requirements of both the Federal Rules of Civil Procedure and the Rules of Practice for the United States District Court for the District of Utah and Ms. Sanborn's motions to strike and for sanctions are consequently DENIED.

### D.   PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS' ATTORNEYS

Ms. Sanborn has also filed a motion seeking monetary sanctions in the amount of $30,767.02 against Defendants' attorneys, the law firm of Nelson, Snuffer, Dahle & Poulsen, for the wilful violation of Rule 4.2 of the Rules of Professional Conduct. Ms. Sanborn claims that Defendants' attorneys communicated with her personally, without inclusion of counsel, in an attempt to settle this lawsuit while knowing that she is represented by counsel.

In response to an inquiry from a title company requesting a complete pay-off amount of an outstanding loan from American Lending to Ms. Sanborn, Defendants' attorneys communicated the pay-off amount. However, because the loan is the subject of Ms. Sanborn's claims against Defendants, Defendants' attorneys not only included the actual amount due for principal and interest, but also included attorney's fees and costs incurred in defending this lawsuit in the complete pay-off figure. In addition to the alleged pay-off amount, the communication to the title company included a "settlement agreement and mutual release," which according to Defendants' attorneys, had to be fully executed by all parties, including Ms.

12

Sanborn, in order for the lien to be released. Upon receipt of the communication from Defendants' attorneys, the title company forwarded a copy to Ms. Sanborn, who immediately provided it to her attorney and which ultimately resulted in this motion being filed.

Defendants contend that their actions were proper because there was never any direct communication between Defendants' attorneys and Ms. Sanborn. Namely, an independent third party title company made a direct request for a pay-off amount for one of American Lending's loans to Ms. Sanborn, and Defendants' attorneys merely provided this unrelated third party with a direct communication in response. Thus, Defendants maintain that there should be no violation of Rule 4.2.

After considering the pleadings, reviewing the subject communication to the title company, and discussing the issue at length with counsel during the hearing on this matter, the Court finds that even if the actions of Defendants' attorneys do not constitute a clear violation of Rule 4.2, their actions were certainly close to crossing the line into inappropriate territory. Although it is true that Defendants' attorneys did not communicate directly with Ms. Sanborn, under the circumstances in this transaction, the communication of the pay-off amount which included costs and attorney's fees as well as the requirement that Ms. Sanborn release her claims against the Defendants, without any attempt to communicate with Ms. Sanborn's attorney, could be considered to be improper. Fortunately, Ms. Sanborn did not sign the release, but rather sought the advice of her attorney, who was able to advise her. Had Ms. Sanborn signed the release without the advice of her attorney, surely she would have been deprived of her right to pursue her claims against the Defendants, while Defendants' attorneys would have received all of their costs and fees incurred in this case.

Nevertheless, having made the above findings, the Court, within its discretion, rules that notwithstanding the actions of Defendants' attorneys, as a practical matter, no sanctions will be imposed as there was no clear violation of Rule 4.2. For one, Ms. Sanborn seeks $30,767.02 in sanctions, an unreasonable amount by any measure. In addition, due to Ms. Sanborn's immediate notification of her attorney, she was not harmed in any way by the actions of Defendants' attorneys. Accordingly, Ms. Sanborn's Motion for Sanctions is DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court hereby (1) DENIES Ms. Sanborn's Motion for Summary Judgment; (2) GRANTS Defendants' Cross-Motions for Summary Judgment as to each of Ms. Sanborn's claim for relief; (3) declines to exercise supplemental jurisdiction over American Lending's counterclaim against Ms. Sanborn, (4) DENIES Ms. Sanborn's combined Motions to Strike American Lending's and Ms. Bevard's Cross-Motions for Summary Judgment and Motions for Sanctions; and (5) DENIES Ms. Sanborn's Motion for Sanctions against Defendants' attorneys.

IT IS SO ORDERED.

DATED this 28th day of March, 2007.


BY THE COURT:


_____
DEE BENSON
United States District Judge

14